Manu J. Tejwani (MJT-4370)
1327 Ethan Court
Yorktown Heights, NY. 10598
Tel.: 914-962-0679
Fax: 914.962.9823
Attorney Pro se

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE ROBINSON

| | |
|---|---|
| MANU J. TEJWANI, | NO. **08 CV 02966** |
| Plaintiff, | COMPLAINT |
| v. | |
| UNITED AIRLINES INC.; UAL CORPORATION | "JURY DEMANDED" |
| Defendants. | |

2008 MAR 21 PM 1:11
S.D. OF N.Y.
U.S. DISTRICT COURT FILED

### COMPLAINT

Plaintiff, Manu J. Tejwani, for his Complaint against the above-named defendants, (collectively "United Airlines" or "Defendant"), alleges as follows:

### NATURE OF THE ACTION

1.  Plaintiff, a United States citizen of Indian origin, brings this action seeking declaratory, injunctive, and monetary relief against United Airlines for unlawful discrimination. In the manner described herein, agents of the Defendant discriminated, harassed, publicly humiliated and wrongfully detained Plaintiff (and spouse Vidya Tejwani) at Los Angeles International Airport while checking in for a return flight to New York (for which they had purchased valid tickets in New York), on the basis of his perceived race, color, ethnicity, alienage, ancestry, and/or national origin. Defendant's actions were intentional and in violation of 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d; and various state laws. In addition to seeking

compensatory and punitive damages, Plaintiff seeks declaratory and injunctive relief requiring Defendant to desist from and remedy such discriminatory action.

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiff's action for declaratory, injunctive, and/or monetary relief is authorized by 28 U.S.C.§§ 1343(a)(4), 2201, and 2202.

3.   Venue is proper in this district pursuant to 28 U.S.C. §1391(a). The contract (airline tickets) leading to the events giving rise to plaintiff's claims were purchased within this district.

## INTRODUCTORY STATEMENT

4.   This civil rights lawsuit is brought to ensure that the promise of equal treatment embodied in federal and state anti-discrimination laws does not become a meaningless guarantee for persons perceived to be different.

5.   Federal law expressly provides that an "air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." 49 U.S.C. § 40127(a). The Department of Transportation (DOT) has cautioned airlines "not to target or otherwise discriminate against passengers based on their race, color, national or ethnic origin, [or] religion, or based on passengers' names or modes of dress that could be indicative of such classification." On October 17, 2001, the DOT sent a second e-mail to the airlines, stating that "it is important to reemphasize that in performing our critical duties, we may not rely on generalized stereotypes or attitudes or beliefs about the propensity of members of any racial, ethnic, religious, or national origin group to engage in unlawful activity."

6. Notwithstanding the forceful statements of the DOT and the clear mandates of federal law, passengers perceived to be different have continued to be subjected to discriminatory treatment by airlines. Indeed, the DOT, which tracks consumer complaints in a monthly "Air Travel Consumer Report," for the first time in 2002 added a category of complaints specifically addressing alleged incidents of discrimination. Unfortunately, every report including the latest December 2007 report documents complaints of discrimination by airlines, including several against United Airlines.

7. This suit is brought in response to one such egregious incident. In an act of blatant racial discrimination, Plaintiff Manu J Tejwani, an United States citizen of Indian descent, was humiliated and wrongful detained while checking in for a flight for which he possessed a valid ticket simply because, he was told, of a fellow passenger's wrongful and malicious false reporting that he had breached security. United Airlines, by its conduct during and after Dr. Manu J. Tejwani's wrongful detention and public humiliation, has effectively conceded that its actions were not based on legitimate security considerations as he and his spouse were soon thereafter issued boarding passes for another uneventful United Airlines flight. Dr. Tejwani brings this suit to ensure that he and others will never again be subjected to similar unlawful and humiliating treatment by United Airlines.

## THE PARTIES

### Plaintiff

8. Dr. Manu J. Tejwani's is a fifty-four year old citizen of the United States. He was born in India and moved to Seattle, Washington in 1974 to study at the University of Washington. Dr. Tejwani, who has lived all his adult life in the United States, became a naturalized citizen of the United States in 1988. He has a dark brown-complexion and outwardly appears to be of Indian descent.

9. Dr. Manu J. Tejwani has a Ph.D in Physics from the University of Washington, Seattle, and a J.D. from Pace University, White palins (night school). Dr. Tejwani was employed as a scientist for companies such as the Hughes Aircraft Company and International Business Machines Corporation, and currently is employed as a patent attorney by Baker Botts L.L.P. in New York City. Dr Tejwani is registered to practice in NY, CT, SDNY, EDNY, and the Fed Cir., but actively practices only before the United States Patent and Trademark Office.

**Defendant**

10. Defendant UAL Corporation is the holding company for Defendant United Airlines, Inc. UAL Corporation is incorporated in Delaware and does business throughout the United States.

11. Defendant United Airlines, Inc. is incorporated in Delaware, does business throughout the United States, and operates the LAX terminal where Dr. Tejwani was wrongfully detained.

12. As of May 7, 2002, Defendant United Airlines, Inc. had received at least $644,086,267.00 in federal financial assistance from the United States Department of Transportation pursuant to sections 101 and 103 of the Air Transportation Safety and System Stabilization Act, P.L. 107-42.

**FACTS GIVING RISE TO THIS ACTION**

13. Plaintiff's son is an undergraduate student at UCLA in Los Angeles. Dr. and Mrs. Tejwani, who reside in New York state, attended a Parents' Weekend at UCLA beginning October 19, 2007.

14. At about noon on October 21, 2007, Dr. and Mrs. Tejwani arrived at LAX with the intention of returning to New York on a United Airlines flight 0890 scheduled for departure at 1:15 pm.

15. Dr and Mrs. Tejwani had previously checked-in for UA 0890 flight on UAL's website before arriving at LAX, but had two bags for check in.

16. Arriving at the east end of the United Airlines Terminal, they were (mis)directed to a long baggage check-in line by the first UA line agent they encountered — Mr. B.B. Aranez, who was told by Dr. Tejwani that they were personally checked in on-line but only needed the bags to be checked in.

17. After progressing slowly through the line through a full U-turn (two lengths), Dr. Tejwani was across from Mr. Aranez and again told him that they were personally checked in but needed only their bags to be checked in, and asked if they were in the right line.

18. Mr. Aranez then opened the line rope to let Dr. and Mrs. Tejwani out to an automatic baggage check-in kiosk area; where when Dr. Tejwani inserted his credit card in the kiosk it indicated it was too late to check-in.

19. Dr. Tejwani promptly returned to Mr. Aranez, and asked him what to do? Mr. Aranez directed him to talk to the UA counter agents for help.

20. Dr. Tejwani approached UA counter agent Ms. Judy Chua's station and waited patiently to catch her attention while she was processing a customer.

21. As Dr. Tejwani was waiting, two adults in a family immediately ahead of Dr and Mrs. Tejwani's position in the baggage check in line started a ruckus, gesticulating and yelling that he was out of line.

22. After processing her customer, Ms. Chua told Dr. Tejwani to return to the line.

23. Dr. and Mrs. Tejwani returned to their original position in the line.

24. Dr and Mrs. Tejwani were subject to racial abuse and demeaning hand gestures by the two adults in the aforementioned family.

25. A white male passenger (hereinafter "John Doe") way behind Dr and Mrs. Tejwani in the line (at that time 15- 20 positions behind, but across the dividing

rope) also joined in the racial abuse, threatening to send the Tejwanis "back to the Middle East."

26. After about 2-3 minutes of quiet, this racially abusive John Doe abruptly yelled out that Dr and Mrs. Tejwani had breached security and had crashed into the line.

27. After several minutes when Dr. and Mrs. Tejwani were almost at the front of the line, UA manager Ms. Veronica Mathias showed up across from Dr. Tejwani and asked if he was in the line from before.

28. Dr. Tejwani told her the above facts.

29. At least six passengers behind Dr. and Mrs. Tejwani indicated to UA manager Mathias's that Dr. and Mrs. Tejwani were in the proper place in the line, had left for a short while and returned.

30. UA manager Mathias continued to insist that all passengers were saying Dr. and Mrs. Tejwani were not in line.

31. Dr. Tejwani asked UA manager Mathias to identify and provide the names of such passengers.

32. UA manager Mathias refused.

33. UA manager Mathias told him to go back 10 positions (exactly 10 positions, not 5 or 20 or the end of the line) and stand behind the racially abusive passenger John Doe (who was then 10 positions behind as several other people had left the line).

34. A passenger from a family about four positions behind Dr. and Mrs. Tejwani leaned across and told Manager Matthias that they should be allowed to check in and board now, as they were properly in line and had only stepped out and back into the line.

35. Dr. Tejwani inquired why was they were being punished. What had they done wrong? No answer from Manager Matthias.

36. Dr. Tejwani was again told by Manager Matthias that "everybody" said he was not in line.

37. Dr. Tejwani asked UA manager Mathias if would give her instructions in writing. She refused.

38. Dr. Tejwani felt the instructions were discriminatory and humiliating (the same as being to go to the back of the bus). Dr. Tejwani asked UA manager Matthias if they were being discriminated against — this she did not deny, but said he was entitled to his opinion.

39. UA manager Mathias then told Dr. Tejwani that she gave him the option of going to position 10. She did not tell him what other option she had in mind.

40. UA manager Mathias wrongfully had LA police swoop down and detain Dr. Tejwani.

41. While Dr. Tejwani was detained and questioned by LA police, a lady identifying herself as the "supervisor of the security personnel" appeared alongside Dr. Tejwani, and said she understood that he had done nothing wrong, there were no security issues, but that they were "at the mercy of United Airlines as it was their [UA's] airline".

42. Dr. Tejwani was not released until all passengers in the line were processed (and in particular the aforementioned John Doe who was processed for check in without any delay or interruption). Thus, UA manager Mathias's unsaid other option was and felt like "the last row of the bus."

43. UA manager Mathias conspired with passenger John Doe to violate Plaintiff's civil rights.

44. After all other passengers had been checked-in, the LA police told Dr. Tejwani that he was cleared for check-in by United Airlines agents.

45. Dr. and Mrs. Tejwani were then checked-in by Ms. Judy Chua and issued boarding passes for a later return flight UA 28 to New York.

46.  The LA Police Officers told Dr. Tejwani not to brood over the incident, take it easy, relax and have lunch in the airport terminal while waiting for the 3:30 PM. flight. They suggested that he could take up the matter administratively with United Airlines "which was a private company and could do whatever they liked."

47.  Dr. Tejwani called in and faxed a consumer complaint to United Airlines on about October 27. 2007. United Airlines has acknowledged receipt of the consumer complaint.

48.  Dr. and Mrs. Tejwani have been deeply affected by this incident, being treated as a second class citizens, humiliated, and wrongfully detained at the whim of a fellow passenger whose prejudices were given privileged status by United Airlines.

49.  United Airlines is complicit in subjecting Dr. and Mrs. Tejwani to racial abuse harassment, and malicious false reporting by at least one United Airlines passenger. United Airlines has been negligent in providing them safety and protection on their premises at LAX.

50.  Upon information and belief, United Airlines has not disciplined its agents for their failure to follow state and federal anti-discrimination law.

51.  Upon information and belief, United Airlines has not taken any action against passenger John Doe for making a false and malicious report with intent to harm.

## **REQUISITES FOR RELIEF**

52.  By reason of the factual allegations set forth above, an actual controversy has arisen and now exists between plaintiff and defendant. A declaration from this court that defendant's actions violated plaintiff's rights is therefore necessary and appropriate.

53.  Defendant's continued discriminatory conduct will result in irreparable harm to plaintiff, including but not limited to violations of his legal rights.

Plaintiff has no plain, adequate, or complete remedy at law to address the wrongs described herein. Plaintiff therefore seeks injunctive relief restraining defendant from engaging in the unlawful acts and practices described above.

## **CLAIMS FOR RELIEF**

### **FIRST CAUSE OF ACTION**
### **Count I: 42 U.S.C. § 1981**
### **Discrimination in the Making and Enforcement of Contracts**

54. Plaintiff repeats and realleges paragraphs 1-53, as if set forth fully herein.

55. The terminal personnel involved in the incident, were at all relevant times agents and/or employees of Defendant United Airlines.

56. Defendant is liable for the unlawful acts of its agents and employees directly and/or under the doctrine of respondeat superior.

57. Defendant engaged in intentional discrimination in wrongfully detaining plaintiff at LAX on October 21, 2007 based on plaintiff's perceived race, color, ethnicity, and/or alienage. In doing so, defendant discriminated against plaintiff in the making and enforcement of his contract with defendant, namely his ticket to travel on United Airlines Flight #0890 on October 21, 2007. Consequently, defendant has caused plaintiff to suffer deprivation of his right to make and enforce contracts as enjoyed by white citizens under 42 U.S.C. § 1981.

58. Defendant's actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for plaintiff's civil rights, and have directly and proximately caused plaintiff financial injury and humiliation, mental pain, and suffering.

### SECOND CAUSE OF ACTION
### Count II: Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d)
### Discrimination by Recipient of Federal Funding

59. Plaintiff repeats and realleges paragraphs 1-58, as if set forth fully herein.

60. Defendant is the recipient of federal financial assistance, and is thus covered by Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d). Title VI and its implementing regulations prohibit recipients of federal monies from discriminating on the basis of, inter alia, race, color, or national origin. Defendant's wrongful detention on the basis of plaintiff's perceived race, color, and/or national origin constituted discrimination against plaintiff in violation of Title VI and its implementing regulations.

61. Defendant's actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for plaintiff's civil rights, and have directly and proximately caused plaintiff's financial injury and humiliation, mental pain, and suffering.

## THIRD CAUSE OF ACTION
### Count III: Intentional Infliction of Emotional Distress

62. Paragraphs 1 through 61 are realleged and incorporated herein by reference.

63. Defendant's above-described conduct was extreme and outrageous. Said conduct was done intentionally and with conscious disregard of plaintiff's rights, and directly and proximately caused plaintiff humiliation, mental pain, emotional distress, and suffering.

64. At all times relevant to the events described above, the terminal personnel involved were employees and/or agents of United Airlines. The discriminatory practices described above were carried out: (a) at the direction of and with the consent, encouragement, knowledge, and ratification of the defendant; (b) under the defendant's authority, control, and supervision; and/or (c) within the scope of the employees' employment.

65. Defendant is liable for the actions of its agents and employees directly and under the doctrine of *respondeat superior*.

66. Through the actions described above of its employees, agents and/or representatives, defendant acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for plaintiff's statutorily protected rights.

## FOURTH CAUSE OF ACTION
### COUNT IV: Negligent Infliction of Emotional Distress

67. Paragraphs 1 through 67 are realleged and incorporated herein by reference.

68. Defendant's above-described conduct constituted a breach of defendant's duty as a common carrier and defendant's duty of care to plaintiff to ensure that defendant and co-passengers did not cause unnecessary or unjustified harm to plaintiff. It was reasonably foreseeable that a breach of that duty by defendant would cause emotional distress to plaintiff.

69. At all times relevant to the events described above, the terminal personnel

involved were employees and/or agents of United Airlines. The discriminatory practices described above were carried out: (a) at the direction of and with the consent, encouragement, knowledge, and ratification of the defendant; (b) under the defendant's authority, control, and supervision; and/or (c) within the scope of the employees' employment.

70. Defendant is liable for the actions of its agents and employees directly and under the doctrine of *respondeat superior*.

71. Through the actions described above of its employees, agents and/or representatives, defendant acted intentionally, maliciously, and with willful, callous, wanton, and reckless disregard for plaintiff's statutorily protected rights.

## PRAYER FOR RELIEF

72. WHEREFORE, plaintiff requests that this Court:

(a) Declare that the actions of defendant described above constituted discrimination on the basis of race, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981, and 42 U.S.C. § 2000d;

(b) Enter a permanent injunction directing defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(c) Award plaintiff compensatory damages in an amount to be determined at trial for the plaintiff's loss and injury including, but not limited to, economic losses, humiliation, embarrassment, emotional distress, and a deprivation of his right to enter and enforce a contract and to travel as a passenger in air transportation regardless of his race, color, ethnicity, alienage, ancestry, or national origin;

NY02:607305.1

(d) Award plaintiff punitive damages in an amount to be determined at trial that would punish defendant for its willful, wanton, and reckless conduct and that would effectively deter defendant from engaging in similar conduct in the future;

(e) Order defendant to cease and desist from all future discrimination or retaliation against plaintiff;

(f) Award plaintiff prejudgment interest;

(g) Award reasonable attorneys' fees and the costs incurred in this action; and

(h) Award such other relief as the Court deems appropriate and just.

Respectfully submitted,

*[signature]*

Manu J. Tejwani
1327, Ethan Court
Yorktown Heights, NY 10509
(914) 962-0679

NY02:607305.1