UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

MANU J. TEJWANI,

        Plaintiff,

    v.

UNITED AIRLINES, INC.; UAL CORP.,

        Defendants,

08 Civ. 2966 (SCR)

MEMORANDUM DECISION
AND ORDER

---

**STEPHEN C. ROBINSON, United States District Judge.**

Manu J. Tejwani commenced this action against United Airlines, Inc. and UAL Corp. (collectively, "United") alleging discrimination in violation of 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Dr. Tejwani's Complaint also seeks recovery for intentional and negligent infliction of emotional distress. United has filed a motion to dismiss Dr. Tejwani's Complaint or, in the alternative, a motion for summary judgment. For the reasons set forth in this opinion, the Court grants United's motion, and Dr. Tejwani's Complaint is dismissed.

# I

# BACKGROUND

This case is at the motion to dismiss stage, and therefore the Court assumes as true "all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

Dr. Tejwani, a fifty-four year old citizen of the United States, has a dark-brown complexion and outwardly appears to be of Indian descent. On October 21, 2007, Dr. Tejwani

and his wife arrived at Los Angeles International Airport ("LAX") at noon intending to board a flight scheduled to depart at 1:15 p.m. Dr. Tejwani and his wife had checked-in for flight 0890 on United's website before arriving at LAX but the couple had two bags to check-in.

Arriving at the east end of United's terminal, they were directed to a long baggage check-in line by the first United line agent that they encountered, B.B. Aranez. After waiting in line, Mr. Tejwani finally reached the front where he found himself across from Aranez. Dr. Tejwani again explained to Aranez that he and his wife had already checked in and thus only needed to check their bags. Aranez then opened the rope line to allow Dr. Tejwani and his wife to check their bags at an automatic baggage check-in kiosk. The kiosk machine, however, indicated that it was too late to check-in. Dr. Tejwani then returned to Aranez and explained the situation. Aranez instructed Dr. Tejwani to speak to the agents at the United desk, which would have required Dr. Tejwani to return to the line in which he originally was waiting.

Rather than returning to the rear of the line, Dr. Tejwani approached the United desk agents. According to Dr. Tejwani, he "waited patiently to catch her attention while she was processing a customer." Compl. ¶ 20. As Dr. Tejwani waited, "two adults in a family immediately ahead of Dr [sic] and Mrs. Tejwani's position in the baggage check in line started a ruckus, gesticulating and yelling that he was out of line." Compl. ¶ 21. After processing her customer, Ms. Chua, a United employee, instructed Dr. Tejwani and his wife to return to the line. The Tejwanis complied.

Thereafter, Dr. Tejwani claims that the two individuals who had complained about his attempt to circumvent the line made racially abusive and demeaning hand gestures toward Dr. Tejwani and his wife. Compl. ¶ 24. A white male passenger ("John Doe") ten to twenty positions behind the Tejwani's position "also joined the racial abuse" and threatened to send the

08 Civ. 2966 (SCR) 3

Tejwanis "back to the Middle East." Compl. ¶ 25. After a few minutes of quiet, John Doe yelled out that the Tejwanis had "breached security and had crashed into the line." Compl. ¶ 26.

When Dr. Tejwani and his wife were almost at the front of the line, Veronica Mathias, a United manager, arrived across from the Tejwanis. She asked them whether they had been on line before. Dr. Tejwani explained to her what had happened. Thereafter, "[a]t least six passengers behind [the Tejwanis] indicated to . . . Mathias that [the Tejwanis] were in the proper place in line, had left for a short while and returned." Compl. ¶ 29.

Despite this, Mathias continued to insist that all passengers were saying that the Tejwanis were not in line. Mathias then told Dr. Tejwani "to go back 10 positions" in line, which required Dr. Tejwani and his wife to stand behind John Doe, the racially abusive passenger. Dr. Tejwani claims that "a family about four positions behind Dr. and Mrs. Tejwani leaned across and told Manager Matthias [sic] that they should be allowed to check in and board now, as they were properly in line and had only stepped out and back into the line." Compl. ¶ 34. After some exchange between him and Mathias, Mathias explained that "everybody" said that the Tejwanis were not in line. Compl. ¶ 36. Dr. Tejwani claims that Mathias had the "LA police swoop down and detain" him and his wife; he and his wife were not permitted to get back on line until after all of the passengers in the line had been processed. Compl. ¶ 40-42. The Complaint asserts that Mathias "conspired with passenger John Doe to violate" Dr. Tejwani's civil rights. Compl. ¶ 43. As a result of this incident, the Tejwanis missed their 1:15 flight, and they had to wait for several hours to board the next flight.

## II

## DISCUSSION

### A. Standard of Review

A motion to dismiss must granted if the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss, a court must "'accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs.'" *Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008) (quoting *Grandon v. Merril Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998)). Ultimately, the purpose of Rule 8 is "to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." *Id.* (internal quotation marks and citations omitted).

In *Bell Atlantic v. Twombly*, the Supreme Court held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. 1955, 1964-65 (2007). A plaintiff therefore must include sufficient factual allegations to "raise a right to relief above the speculative level," *id.* at 1965; that is, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974. The Second Circuit has explained that, in its view, "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

### B. Dr. Tejwani's Complaint Must Be Dismissed

Title 42, section 1981(a) of the United States Code provides that

> all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The phrase "make and enforce contracts" is defined by section 1981(b): "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To survive a motion to dismiss a section 1981 claim, the Court of Appeals for the Second Circuit has explained, a plaintiff must "allege facts supporting the following elements: (1) plaintiff[] [is] a member[] of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). Indeed, the Second Circuit has emphasized that "[s]ection 1981, like the Equal Protection Clause, only prohibits intentional racial discrimination." *Id.*; *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude . . . that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."). Accordingly, a plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Bell Atl.*, 127 S. Ct. at 1964-65.

Dr. Tejwani's Complaint does not state a plausible claim that he was subjected to intentional discrimination. The Complaint does not assert that any United employee uttered any

derogatory remarks or comments or that any United employee encouraged such behavior on the part of some of the passengers waiting on line. Nor does Dr. Tejwani's Complaint allege that United provided preferential or non-discriminatory treatment to *any* similarly-situated non-minority passengers. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (noting that, in a section 1981 case, a plaintiff may seek to draw an inference of discriminatory intent by pleading that "similarly situated patrons were given preferential treatment"). Dr. Tejwani simply alleges, in conclusory fashion, that Mathias "conspired with passenger John Doe to violate" Dr. Tejwani's civil rights. Compl. ¶ 43. From the allegations in the Complaint, however, it is evident that Mathias was not present when passenger John Doe was verbally abusing the Tejwanis with his despicable comments. *See* Compl. ¶ 25-27 (noting that when John Doe ended his tirade it was "several minutes" before "Veronica Mathias showed up"). The Complaint does not allege that Mathias and John Doe knew each other or that they ever had an opportunity to agree to act in any concerted manner against the Tejwanis.

Finally, as in *Yusuf v. Vassar College*, Dr. Tejwani's Complaint itself identifies a number of race-neutral factors that may have led to his perceived mistreatment by United's employees. Dr. Tejwani admits that he left his position in the check-in line to use a kiosk, and, after the kiosk machine indicated that it was too late to check-in, he attempted to get the attention of the counter agent, who was processing another customer. To the customers on the line, it appeared that Dr. Tejwani was attempting to circumvent the line and, as a result, "two [individuals] . . . *immediately ahead of [the Tejwani's position in line]* started a ruckus, gesticulating, and yelling that he was out of line." Compl. ¶ 21 (emphasis supplied). As in *Yusuf*, "the abundance of other possible reasons" for Mathias' treatment of Dr. Tejwani, "combined with the lack of any specific factual support for his claim of racial motivation[,] illustrates that his claim here is simply a

08 Civ. 2966 (SCR)                                                                                                        7

'naked allegation' of racial discrimination." *Yusuf*, 35 F.3d at 714. Consequently, the Court grants United's motion to dismiss in its entirety.[*]

It is apparent from the allegations in the Complaint that Dr. Tejwani and his wife were subjected to contemptible and cutting comments by certain passengers on line. As vile as those comments may have been, they were uttered by private individuals, and it is apparent, from Dr. Tejwani's Complaint, that those comments were neither sanctioned nor encouraged by United Airlines. The Nation's discrimination laws do not give this Court license to impose a general code of civility by holding parties, irrespective of their participation, liable for the intentional discrimination of others. *Oncale v. Sundowner Offshore Srvs., Inc.*, 523 U.S. 75, 80 (1998).

## Conclusion

For the foregoing reasons, the Court grants United's motion to dismiss. The Clerk of the Court is directed to close this case, including docket entries number 10 and 14.

*It is so ordered.*

Dated: _March 30_, 2009

White Plains, New York

                                                Stephen C. Robinson
                                                United States District Judge

---

[*] Dr. Tejwani's claim under Title VI also requires a showing of intentional discrimination, and therefore the Court dismisses that claim as well. *See* 42 U.S.C. § 2000d; *New York Urban League, Inc. v. State of New York*, 71 F.3d 1031, 1036 (2d Cir. 1995) (noting that "the Supreme Court held that [section 2000d] only prohibits *intentional* discrimination") (emphasis in original). Having dismissed all of Dr. Tejwani's federal claims, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c); *Rick v. DeStefano*, 530 F.3d 88, 122 (2d Cir. 2008).